1

2

3

Name: Fernando Gastelum
Address: 209 W. 9th Street, Casa Grande, AZ 85122
Telephone Number: Number: 520-560-0927
Email: fernandog8899@gmail.com
*Pro se*

FILED ☒    LODGED ___
RECEIVED ___    COPY ___

JUN 1 0 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

4

5

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| 6 FERNANDO GASTELUM, | Case No.: **CV24-01382-PHX-MTM** |
| 7 Plaintiff, | **VERIFIED COMPLAINT FOR** |
| 8 vs. | **VIOLATIONS OF:** |
| 9 THE TJX COMPANIES, INC. | Americans with Disabilities Act |
| 10 Defendant. | Common Law Breach of Duty |

11

12

### I.
### PARTIES

13

14

**A. Plaintiff**

15

1. Plaintiff is a senior citizen with physical disabilities. Plaintiff is missing a leg.

16

2. Plaintiff is an ADA Tester.

17

3. Plaintiff lives in Casa Grande, Arizona, with his extended family:

18

19

20

21

22

23

24

25

26

27



28

4. Since 2015, Plaintiff has been using a wheelchair for mobility in locations that are designed for wheelchair use:



5. Plaintiff's missing leg is a physical impairment that substantially limits one or more major life activities like walking, reaching, pushing and other musculoskeletal activities that are normally associated with missing lower limbs.

**B. Defendant TJX Is The "Public Accommodation" Against Whom Remedies Are Sought; Individual Stores are "Places of Public Accommodation".**

6. TJX is a public accommodation that owns and/or operates 4,500± stores doing business as Marshalls, TJ Maxx and Homegoods.

7. As a "public accommodation", TJX is required to comply with the non-discriminatory provisions of the ADA, including 42 U.S.C. §12182. (b)(1)(D), 42 U.S.C. §12182 (b)(2)(A)(ii) and 42 U.S.C. §12182 (b)(2)(A)(iii) which require it to, inter alia:

A. Modify its policies, practices and procedures to make *all* its *places* of public accommodation accessible. *See* 42 U.S.C. §12182 (b)(2)(A)(ii); and

B. Take the necessary steps to make *all* its stores accessible. *See* 42 U.S.C. §12182 (b)(2)(A)(iv).

8. Individual stores referenced in Table 1 below are TJX's *places* of public accommodation.

## II
## FEDERAL QUESTION, DIVERSITY, SUPPLEMENTAL JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

10. Plaintiff often conducts business in Phoenix and Tucson to shop there because his home is located in Casa Grande.

11. Plaintiff has specific intent to return to each of the Stores in September, 2024, to review each one for ADA compliance.

12. Plaintiff is otherwise deterred from conducting business at each of the Stores, or any other store owned or operated by TJX because TJX, as the public entity, has failed to comply with the non-discriminatory provisions of the ADA, including 42 U.S.C. - §12182. (b)(1)(D), 42 U.S.C. §12182 (b)(2)(A)(ii) and 42 U.S.C. §12182 (b)(2)(A)(iv).

13. The Court also has diversity jurisdiction  pursuant to 28 U.S.C. §§ 1332 based on:

A. Plaintiff is a citizen of the state of Arizona; and

B. Defendant is a citizen of the State of Massachusetts; and

C. The amount in controversy, including (1) cost of compliance with injunctive relief, (2) statutory damages, and (3) attorney's fees, all of which, to the best of Plaintiff's estimate, greatly exceed the statutory threshold of $75,000.00.

14. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367(a) because state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

15. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

### III
### GENERAL FACTUAL ALLEGATIONS

16. Plaintiff shops and conducts business with TJX Stores on a regular basis both in Arizona and California. On the dates specified below in Table 1, Plintiff conducted business at the following TJX's *places* of public accommodation:

| | NAME | L0CATION | DATE(S) |
|---|---|---|---|
| A | HomeGoods Casa Grande | 1004 N. Promenade Pkwy, Casa Grande, AZ 85194 | July 5, 2023 |
| B | Marshalls Casa Grande | 1004 N. Promenade Pkwy, Casa Grande, AZ 85194 | September 30, 2023 |
| C | Marshalls at Tempe Marketplace | 1800 Rio Salado Pkwy S140,  Tempe, AZ 85281 | May 16, 2024 |
| D | Marshalls of Colonnade | 1801 E. Camelback Rd., Phoenix, AZ 85016 | May 16, 2024 |
| E | Marshalls at Arizona Mills | 5000 Arizona Mills Circle, Tempe, AZ 85282 | May 16, 2024 |
| F | TJ Maxx on Baseline | 853 Baseline Rd., Gilbert, AZ 85033 | May 16, 2024 |
| G | HomeGoods on Baseline | 853 Baseline Rd., Gilbert, AZ 85033 | May 16, 2024 |
| H | HomeGoods San Tan Village | 2070 E. Williams Field Rd., Gilbert, AZ 85295 | May 16, 2024 |
| I | Marshalls San Tan Village | 2070 E. Williams Field Rd., Gilbert, AZ 85295 | May 16, 2024 |
| J | TJ Maxx Gilbert | 3787 S Gilbert Rd, Gilbert, AZ 85297 | May 16, 2024 |
| K | HomeGoods on Broadway | 7170 E. Broadway, Tucson, AZ 85710 | June 2, 2024 |
| L | HomeGoods on Oracle | 7755 N. Oracle Rd., Tucson, AZ 85704 | June 2, 2024 |
| M | HomeGoods on Cortaro | 8028 N. Cortaro Rd., Tucson, AZ 85743 | June 2, 2024 |
| N | Marshalls on Irvington | 1167 w. Irvington Rd., Tucson, AZ 85714 | June 2, 2024 |

| O | Marshalls on Broadway | 3541 E. Broadway Blvd., Tucson, AZ 85716 | June 2, 2024 |
| P | Marshalls on Oracle | 7900 North Oracle Rd., Tucson, AZ 85704 | June 2, 2024 |
| Q | TJ Maxx on Oracle | 6230 N. Oracle Rd., Tucson, AZ 85704 | June 2, 2024 |
| R | TJ Maxx on Broadway | 6337 E. Broadway Blvd., Tucson, AZ 85710 | June 2, 2024 |
| S | TJ Maxx on Cortaro | 8030 N. Cortaro Rd., Tucson, AZ 85743 | June 2, 2024 |

**Table 1**

17. In addition to the TJX Stores identified and disclosed above, Plaintiff has visited and conducted business at countless other TJX Stores.

18. Every time Plintiff has visited any TJX Store identified above, he was using a wheelchair.

19. All TJX Stores Plaintiff has visited had one thing in common: They failed to provide sufficiently wide route between rows of merchandise to make the merchandise accessible to and usable by Plintiff.

20. The condition at all TJX stores demonstrate TJX's failure to abide by the primary anti-discrimination directive of 42 U.S.C. §12182 in the following non-exclusive particulars:

    A. TJX's failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities; and

    B. TJX's failure to remove architectural barriers where such removal is readily achievable.

21. Plaintiff has made numerous requests to TJX to make reasonable modifications in its policies, practices and procedures to make its stores accessible to and usable by Plaintiff, but TJX has refused.

22. Plaintiff has made numerous requests to TJX to remove architectural barriers at its stores where such removal is readily achievable, but TJX has refused.

1
2
3
4

## IV
## SPECIFIC ALLEGATIONS OF ADA VIOLATIONS AT STORES REFERENCED IN TABLE 1 ABOVE

**A. Plaintiff Conducted Business At HomeGoods Casa Grande on July 5, 2023 And Was Denied Full And Equal Access.**

23. Plaintiff visited the HomeGoods Casa Grande on July 5, 2023 with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

24. Plaintiff was denied full and equal access by virtue of the following architectural barrier to accessibility:

    A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5:

**B. Plaintiff Conducted Business Marshalls Casa Grande on September 30, 2023 And Was Denied Full And Equal Access.**

25. Plaintiff visited Marshalls Casa Grande on September 30, 2023 with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

26. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

**C. Plaintiff Conducted Business at Marshalls at Tempe Marketplace on May 16, 2024, And Was Denied Full And Equal Access.**

27. Plaintiff visited Marshalls at Tempe Marketplace on May 16, 2024 with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

28. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

**D. Plaintiff Conducted Business at Marshalls of Colonnade on May 16, 2024, And Was Denied Full And Equal Access.**

29. Plaintiff visited Marshalls of Colonnade with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

30. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

D. There were exposed pipes under the sink in the bathroom. This condition made it more difficult for Plaintiff to use the sink without touching the surface of the pipes. This condition violates accessibility standards at 606.5.

**E. Plaintiff Conducted Business at Marshalls at Arizona Mills on May 16, 2024, And Was Denied Full And Equal Access.**

31. Plaintiff visited Marshalls of at Arizona Mills with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

32. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

**F. Plaintiff Conducted Business at TJ Maxx on Baseline in May 16, 2024, And Was Denied Full And Equal Access.**

33. Plaintiff visited TJ Maxx on Baseline with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

34. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

   A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

   B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair,

**G. Plaintiff Conducted Business at HomeGoods on Baseline on May 16, 2024, And Was Denied Full And Equal Access.**

35. Plaintiff visited Homegoods on Baseline with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

36. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

   A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

**H. Plaintiff Conducted Business at HomeGoods San Tan Village on May 16, 2024, And Was Denied Full And Equal Access.**

37. Plaintiff visited Homegoods San Tan Village with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

38. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

**I. Plaintiff Conducted Business at Marshalls San Tan Village on May 16, 2024, And Was Denied Full And Equal Access.**

39. Plaintiff visited Marshalls San Tan Village with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

40. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

**J. Plaintiff Conducted Business at TJ Maxx Gilbert on May 16, 2024, And Was Denied Full And Equal Access.**

41. Plaintiff visited TJ Maxx Gilbert on Baseline with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

42. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**K. Plaintiff Conducted Business at HomeGoods on Broadway on June 2, 2024, And Was Denied Full And Equal Access.**

43. Plaintiff visited Homegoods on Broadway with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the

unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

44. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**L. Plaintiff Conducted Business at Homegoods on Oracle on June 2, 2024,  And Was Denied Full And Equal Access.**

45. Plaintiff visited Homegoods on Oracle with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

46. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**M. Plaintiff Conducted Business at Homegoods on Cortaro on June 2, 2024, And Was Denied Full And Equal Access.**

47. Plaintiff visited Homegoods on Cortaro with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

48. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**N. Plaintiff Conducted Business at Marshalls on Irvington on June 2, 2024, And Was Denied Full And Equal Access.**

49. Plaintiff visited Marshalls on Irvington with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

50. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**O. Plaintiff Conducted Business at Marshalls on Broadway on June 2, 2024,  And Was Denied Full And Equal Access.**

51. Plaintiff visited Marshalls on Irvington with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

52. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**P.  Plaintiff Conducted Business at Marshalls on Oracle on June 2, 2024,  And Was Denied Full And Equal Access.**

53. Plaintiff visited Marshalls on Oracle with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

54. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

   A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

   B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

   C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**Q. Plaintiff Conducted Business at TJ Maxx on Oracle on June 2, 2024, And Was Denied Full And Equal Access.**

55. Plaintiff visited TJ Maxx on Oracle with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

56. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

   A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**R. Plaintiff Conducted Business at TJ Maxx on Broadway on June 2, 2024, And Was Denied Full And Equal Access.**

57. Plaintiff visited TJ Maxx on Broadway with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

58. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

**S. Plaintiff Conducted Business at TJ Maxx on Cortaro on June 2, 2024, And Was Denied Full And Equal Access.**

59. Plaintiff visited TJ Maxx on Broadway with the intention to avail himself of its goods or services and purchased goods there. Plaintiff personally encountered the unlawful barriers to accessibility. At the time, Plaintiff wanted to return and patronize the Store

but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them.

60. Plaintiff was denied full and equal access by virtue of the following barriers to accessibility:

    A. The clear width of accessible routes between rows of merchandise was less than 36". This condition made it more difficult for Plaintiff to shop between displays of merchandise. This condition violates accessibility standards at 403.5.

    B. Protruding objects reduced clear width of accessible routes between rows of merchandising displays. This condition made it more difficult for Plaintiff to move between the rows of merchandise and shop from his wheelchair.

    C. The bathroom door required the push-pull force greater than 5 lbs. This condition made it more difficult for Plaintiff to open the door. This condition violates accessibility standards at 309.4.2.

## V
## CLAIMS

### Count One
### Violation Of TJX's Discriminatory Practices and Procedures
(42 U.S.C. §12182 (b)(2)(A)(ii))

61. Plaintiff incorporates all allegations contained elsewhere in this Verified Complaint.

62. Discrimination is defined, inter alia, as a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

63. Upon information and belief, TJX intentionally fails to adopt required policies and procedures to allow the accessible route between displays of merchandise to be illegally narrowed in order to maximize selling space.

64. Plaintiff and others similarly situated are deterred from visiting *any* TJX store because they know that TJX violates ADA's primary directive by failing to adopt non-discriminatory policies and procedures.

65. Plaintiff made numerous requests that TJX make reasonable modifications in several prior and current legal proceedings that are necessary to accommodate Plaintiff's disability, but Defendant has refused and continues to refuse to modify its policies and procedures.

66. TJX has failed to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, including Plaintiff, when the accommodation would work a fundamental alteration of those services and facilities.

WHEREFORE, Plaintiff prays for relief as follows:

A. Declaration that at the commencement of this action Defendant did not have enforceable policies, practices, or procedures to afford goods, services, facilities, privileges, advantages, or accommodations to Plaintiff and others similarly situated in violation of 42 U.S.C. § 12182(b)(2)(A); and

B. For injunctive relief requiring Defendant to abide by 42 U.S.C. § 12182(b)(2)(A) and adopt non-discriminatory policies and procedures; and

C. For costs and fees incurred in the action; and

D. For attorney's fees in the event Plaintiff retains learned counsel to represent him in this action; and

E. For such other and further relief to which he may be entitled.

## Count Two
### Violation of Architectural Barries
(42 U.S.C. §12182 (b)(2)(A)(iv))

67. Plaintiff realleges all allegations elsewhere in this complaint.

68. TJX's failure to provide appropriately spaced accessible route between rows of merchandise in all stores visited by Plaintiff is virtually indistinguishable from store to store.

69. Plaintiff and others similarly situated are deterred from visiting any TJX store because they know that the space between rows of merchandise is narrowed to maximize selling space which, in turn, denies disabled persons full and equal access.

70. The barriers listed above relate to Plaintiff's disability and interfere with his full and equal enjoyment of the TJX Stores because the barriers make it more difficult for Plaintiff to access the goods and services there.

71. Plaintiff made numerous requests that TJX make reasonable modifications in several prior and current legal proceedings that are necessary to accommodate Plaintiff's disability, but Defendant has refused and continues to refuse to modify its policies and procedures.

72. The remediation of the barriers identified above is readily achievable.

73. Plaintiff intends to return to each of the TJX Stores in the fall of 2024 provided that the Stores have become fully accessible to him.

74. Plaintiff is deterred from visiting and shopping at *any* TJX Store because TJX has not complied with the non-discriminatory provisions of 42 U.S.C. § 12182(b)(2)(A).

75. Consequently, the injury to Plaintiff is likely to recur as a matter of law not only in the referenced stores, but at all TJX Stores.

WHEREFORE, Plaintiff requests relief as follows:

A. Declaration that at the commencement of this action Defendant was in violation of the specific architectural requirements of disability laws detailed above; and

B. Order that Defendant implement enforceable policies, practices, or procedures to afford goods, services, facilities, privileges, advantages, or accommodations to Plaintiff and others similarly situated and to otherwise comply with 42 U.S.C. § 12182(b)(2)(A); and

C. Order that TJX remove *all* barriers to accessibility in *all* its Stores; and

D. Order that TJX remediate each and every inaccessible element in the stores that are subject of this Verified Complaint; and

E. For costs and expenses and lawyer's fees should Plaintiff hire a lawyer; and

F. The provision of whatever other relief the Court deems just, equitable and appropriate.

## Count Three
## Breach of Duty

76. TJX has a legal duty to adopt non-discriminatory policies and procedures and to remove all accessibility barriers at all its stores pursuant to Federal and State Statutes.

77. A breach of duty claim is not pre-empted by the ADA because it do not "invalidate or limit the remedies, rights and procedures of …State or local laws (including State common law)… ". 28 C.F.R. § 36.103(c).

78. TJX has a legal duty to abide by Federal and State Statures, that is, to take the necessary steps to make *all* its stores accessible to Plaintiff.

79. A special relationship exists between public accommodations (TJX) and disabled persons (Plaintiff) recognized by Federal and State Statutes.

80. TJX breached its duty of compliance with Federal and State statutes based on the special relationship between TJX and Plaintiff.

81. As a direct and proximate result of THX's breach of its legal duties, Plaintiff has been harmed, aggrieved and injured.

82. The term "injury" is defined as "the invasion of any legally protected interest of another".

83. Plaintiff has been injured by TJX's invasion of his legally protected right to equal access.

84. The term "harm" is defined as "the existence of loss or detriment in fact of any kind to a person resulting from any cause."

85. Plaintiff suffered injury and consequential harm by TJX's refusal to grant him full and equal access to its Stores.

86. "Harm" is actionable in this case "because it results from the invasion of [Plaintiff's] invasion of a legally protected" right to access.

87. Arizona Constitution, Article XVIII, Section 6 provides that "[t]he right of action to recover damages for injuries shall never be abrogated…".

88. The "anti-abrogation" clause—applies to causes of action like negligence.

89. Plaintiff suffered harm from TJX's invasion of his legally protected rights to equal access in the following, non-exclusive ways:

20

A. Plaintiff is unable to access the merchandise for sale at TJX Stores when using his wheelchair; and

B. In order to access merchandise at TJX Stores, Plaintiff must exit the wheelchair to squeeze himself between rows and displays of merchandise which, in turn causes him pain and discomfort; and

C. When the prosthesis rubs against the skin, causing further pain and discomfort, perspiration of the leg within the prosthesis, the need to remove the prosthesis and dry up the perspiration;

D. The feeling of disdain and disapproval by other patrons at the store; and

E. The feeling of relegation to a second class citizenship status; and

F. The scorn and emotional distress caused by TJX; and

G. Emotional distress and frustration.

90. TJX is aware that its refusal to adopt proper anti-discriminatory policies and procedures harm persons with disabilities, including Plaintiff.

91. Plaintiff alleges, on information, belief, that TJX's policies, procedures and practices involve knowingly maintaining its Stores inaccessible, and make remediations only if a disabled person complains.

92. In its practice, TJX's discrimination is guided by evil hand and evil mind in the following particulars:

A. TJX engages in conduct it knowns will harm and injure Plaintiff and others similarly situated; and

B. TJX engages in intentional discrimination with the conscious disregard for the rights of Plaintiff.

93. Plaintiff alleges that all discrimination is evil.

94. Plaintiff seeks damages for the harm and consequential injuries experienced at TJX Stores including, without limitation, its overt, continuous, unrelenting, intentional and evil discrimination.

WHEREFORE, Plaintiff requests relief as follows:

A. That Defendant has a duty to make its places of public accommodations accessible to Plintiff; and

B.  That Defendant breached its duty; and

C.  That Defendant's breach of its duty has directly harmed Plaintiff; and

D. For damages including punitive damages; and

E.  For costs and fees incurred in this action.

**<u>Request For Trial By Jury</u>**

Plaintiff requests a trial by a jury on issues triable by a jury.

**<u>Verification</u>**

RESPECTFULLY SUBMITTED this ___7___ day of ~~May,~~ June 2024.

Fernando Gastelum, Pro Se

22